2007 WY 173

**Marshall BATTEN, Appellant (Petitioner),**

v.

**WYOMING DEPARTMENT OF TRANSPORTATION DRIVERS' LICENSE DIVISION, Appellee (Respondent).**

**No. 06–290.**

Supreme Court of Wyoming.

Nov. 2, 2007.

Representing Appellant: Mike Cornia, Evanston, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; David J. Willms, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Marshall Batten appeals from the Office of Administrative Hearings' (OAH) order upholding the Wyoming Department of Transportation's (WYDOT) suspension of his driver's license for driving while under the influence of alcohol (DWUI). He claims his constitutional rights were violated because the trooper did not have reasonable suspicion to detain him in order to conduct field sobriety tests after the original purpose of the stop had concluded and the trooper did not have probable cause to arrest him for DWUI. We conclude the record contains substantial evidence to support the OAH findings of fact and, as a matter of law, Mr. Batten's consti-

tutional rights were not violated. Consequently, we affirm.

## ISSUE

[¶ 2] Mr. Batten does not present a separate statement of the appellate issues as required by W.R.A.P. 7.01. However, his discussion includes the following statement, which summarizes his arguments on appeal:

I. The decision of the hearing officer was arbitrary, capricious and not in accordance with law.

    a) Trooper Adams did not posses[s] the requisite reasonable suspicion of illegal activity to detain Mr. Batten.

    b) [Trooper] Adams lacked probable cause to arrest Mr. Batten.

The State rephrases the issue as:

Whether the district court erred in affirming the decision of the hearing officer who determined there was reasonable suspicion to stop [Mr.] Batten and probable cause to arrest him. Further, whether there was substantial evidence to support [Mr.] Batten's per se driver's license suspension? [1]

## FACTS

[¶ 3] At approximately 11:00 p.m. on June 7, 2005, Wyoming Highway Patrol Trooper Michael Adams observed a white GMC "Jimmy" driving southbound on Highway 410 in Uinta County, Wyoming. The trooper stopped the Jimmy because the right headlight was not working. Mr. Batten was the driver and sole occupant of the vehicle. He provided the trooper with his driver's license, but was unable to locate the proof of insurance for the vehicle. The trooper informed Mr. Batten that one of his headlights was broken. He indicated he was aware of the problem and it was scheduled to be repaired the next day.

[¶ 4] The trooper wrote a warning ticket for the broken headlight and failure to provide proof of insurance. As he approached the Jimmy with the ticket, he noticed the odor of alcohol coming from Mr. Batten. Trooper Adams asked Mr. Batten if he had

---

1. Except in the context of the constitutional challenges, Mr. Batten does not contest the sufficiency of the evidence to support the per se adminis-trative suspension of his driver's license. Thus, we will not separately address that issue in this decision.

been drinking, and he replied that he had just come from a bar where he had consumed one drink. Trooper Adams asked Mr. Batten to exit his vehicle to perform field sobriety maneuvers, including the horizontal gaze nystagmus, one leg stand, and walk and turn tests. The trooper also administered a portable breath test to Mr. Batten, which indicated an alcohol concentration of .107%.

[¶ 5] Trooper Adams arrested Mr. Batten and took him to the Uinta County jail. He read Mr. Batten the implied consent advisement, and Mr. Batten consented to take another breath test, resulting in an alcohol concentration of .09%. WYDOT sent Mr. Batten a letter indicating that, because he had been arrested for driving with an alcohol concentration of greater than .08%, his driver's license would be suspended for 90 days pursuant to Wyoming's Implied Consent

statute, Wyo. Stat. § 31–6–102 (LexisNexis 2003).[2] Mr. Batten challenged the suspension and requested a contested case hearing. He appeared at the hearing; WYDOT did not appear but presented its certified record. The OAH upheld the suspension, and Mr. Batten filed a petition for review of the agency decision with the district court. The district court affirmed, and he appealed to this Court.

## STANDARD OF REVIEW

■ [¶ 6] We accord no deference to a district court decision reviewing an administrative agency order. Instead, we review the case as if it came directly from the administrative agency. *Bradshaw v. Wyo. Dep't of Transp. Drivers' License Div.*, 2006 WY 70, ¶ 10, 135 P.3d 612, 615 (Wyo.2006); *Bush v.*

2. Wyo. Stat. Ann. § 31–6–102 states in pertinent part:

(a) If arrested for an offense as defined by W.S. 31–5–233:

(i) Any person who drives or is in actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol concentration or controlled substance content of his blood. The test or tests shall be:

(A) Incidental to a lawful arrest;

(B) Given as promptly as possible after the arrest;

(C) Administered at the direction of a peace officer who has probable cause to believe the person was driving or in actual physical control of a motor vehicle upon a public street or highway in this state in violation of W.S. 31–5–233(b) or any other law prohibiting driving under the influence as defined by W.S. 31–5–233(a)(v). The peace officer who requires a test pursuant to this section may direct that the test shall be of blood, breath or urine. However, if the officer directs that the test be of the person's blood or urine, the person may choose whether the test shall be of blood or urine. The person has this option unless the peace officer has probable cause to believe there is impairment by a controlled substance which is not subject to testing by a blood or breath test in which case a urine test may be required.

(ii) For tests required under this act, the arrested person shall be advised that:

(A) His failure to submit to all required chemical tests requested by the peace officer shall result in the suspension of his Wyoming driver's license or his privilege to operate a

motor vehicle for a period of six (6) months for a first offense or eighteen (18) months for a second or subsequent offense as provided by W.S. 31–6–107;

(B) If a test is taken and the results indicate the person is under the influence of alcohol or a controlled substance, he may be subject to criminal penalties and his Wyoming driver's license or his privilege to operate a motor vehicle shall be suspended for ninety (90) days;

(C) After submitting to all required chemical tests requested by the peace officer at a place and in a manner prescribed by and at the expense of the agency employing the peace officer, the arrested person may go to the nearest hospital or clinic and secure any additional tests at his own expense;

(D) If he refuses to take all required tests, he shall not be eligible for limited driving privileges.

Wyo. Stat. Ann § 31–5–233 (LexisNexis 2003) states in relevant part:

(a) As used in this section:

(i) "Alcohol concentration" means:

(A) The number of grams of alcohol per one hundred (100) milliliters of blood;

(B) The number of grams of alcohol per two hundred ten (210) liters of breath; or

(C) The number of grams of alcohol per seventy-five (75) milliliters of urine.
* * * *

(b) No person shall drive or have actual physical control of any vehicle within this state if the person:

(i) Has an alcohol concentration of eight one-hundredths of one percent (0.08%) or more; or

(ii) To a degree which renders him incapable of safely driving:

(A) Is under the influence of alcohol;

*State ex rel. Wyo. Workers' Comp. Div.*, 2005 WY 120, ¶ 4, 120 P.3d 176, 178 (Wyo.2005). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2007):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 7] "Where both parties present evidence at an administrative hearing, we review the entire record to determine if the agency findings are supported by substantial evidence." *Bradshaw,* ¶ 11, 135 P.3d at 616; *Bush,* ¶ 5, 120 P.3d at 179. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* Phrased another way, "[f]indings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can conclude a reasonable mind might accept the evidence as adequate to support the agency findings." *Id.* We review the agency's conclusions of law *de novo. Powder River Coal Co. v. Wyo. Dep't*

*of Revenue,* 2006 WY 137, ¶ 9, 145 P.3d 442, 446 (Wyo.2006).

## DISCUSSION

[¶ 8] Mr. Batten challenges the OAH decision on two bases. First, he claims Trooper Adams did not have reasonable suspicion to detain him for the purpose of performing the field sobriety tests. He also claims the trooper did not have probable cause to justify his warrantless arrest for DWUI. If either of these arguments is correct, then his arrest was unlawful and the provisions of the implied consent statute do not apply to mandate suspension of his driver's license. *Marshall v. State ex rel. Dep't of Transp.*, 941 P.2d 42, 44, 46 (Wyo.1997).

### 1. *Reasonable Suspicion*

[¶ 9] The Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution protect citizens from unreasonable searches and seizures. Mr. Batten provides a general constitutional argument and does not specifically claim that the Wyoming Constitution provides greater protection than the Fourth Amendment under these circumstances; consequently, we will limit our analysis to the federal principles. *See Custer v. State,* 2006 WY 72, ¶ 11, 135 P.3d 620, 623–24 (Wyo.2006).

[¶ 10] A traffic stop is a limited investigatory detention and implicates constitutional protections. *Barch v. State,* 2004 WY 79, ¶ 7, 92 P.3d 828, 831 (Wyo.2004). In accordance with *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), we consider the following questions to determine the validity of the detention: 1) Was the initial stop justified? and 2) Were the officer's actions during the detention " 'reasonably related in scope to the circumstances that justified the interference in the first instance[?]' " *O'Boyle v. State,* 2005 WY 83, ¶ 46, 117 P.3d 401, 414 (Wyo.2005), quoting *Campbell v. State,* 2004 WY 106, ¶ 11, 97 P.3d 781, 784 (Wyo.2004). Mr. Batten focuses his argument on the second part of the *Terry* analysis, presumably because the trooper was justified in stopping him for the broken headlight.

[¶ 11] "[A]n investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." *O'Boyle*, ¶ 47, 117 P.3d at 414. A law enforcement officer may expand the investigative detention beyond the scope of the initial stop if the traveler consents to the expanded detention or if the officer has "an objectively reasonable suspicion that criminal activity has occurred or is occurring" or a reasonable suspicion that an occupant of the vehicle is armed. *Id.* at ¶ 48, 117 P.3d at 414, citing *Damato v. State*, 2003 WY 13, ¶ 13, 64 P.3d 700, 706 (Wyo.2003), and *Brown v. State*, 944 P.2d 1168, 1172 (Wyo.1997). In the context of this case, the trooper was required to show " 'the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion' " that Mr. Batten had driven while under the influence of alcohol in order to justify the continued detention for purposes of performing the field sobriety tests. *Custer*, ¶ 13, 135 P.3d at 624–25, quoting *Wilson v. State*, 874 P.2d 215, 220 (Wyo.1994). The totality of the evidence is considered in determining whether the trooper had reasonable suspicion to extend the detention. *Custer*, ¶ 20, 135 P.3d at 626.

[¶ 12] Because we are reviewing an administrative agency's rulings on this constitutional question, we apply the substantial evidence standard to the OAH's findings of fact.[3] *Bradshaw*, ¶ 11, 135 P.3d at 616. "The question of whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed *de novo.*" *Moulton v. State*, 2006 WY 152, ¶ 13, 148 P.3d 38, 42 (Wyo.2006).

[¶ 13] The hearing examiner ruled that the odor of alcohol and Mr. Batten's admission that he had consumed "one drink" established reasonable suspicion to detain him to conduct the field sobriety tests. Mr. Batten apparently does not contest the hearing examiner's findings of fact on this issue. Instead, he argues that the facts do not support the hearing examiner's legal conclusion that reasonable suspicion existed to detain him in order to conduct the field sobriety tests. Mr. Batten maintains that the only indication the trooper had that he was possibly driving while intoxicated was the "moderate odor" of alcohol, and that was insufficient. We disagree that characterizing the odor of alcohol as "moderate" prevents that odor from constituting an adequate basis for reasonable suspicion of driving under the influence. Even if that were true, the record contains other undisputed facts to support the hearing examiner's conclusion that reasonable suspicion existed. In addition to the odor of alcohol, the trooper asked Mr. Batten if he had been drinking and he admitted he had just left a bar where he had consumed one drink. Furthermore, he could not locate the proof of insurance for the vehicle when the trooper requested it and he was driving a vehicle late at night with knowledge that it had a broken headlight.

[¶ 14] The Idaho Supreme Court concluded that reasonable suspicion existed under circumstances comparable to those presented here. *State v. Ferreira,* 133 Idaho 474, 988 P.2d 700, 710 (Ct.App.1999). In that case, Mr. Ferreira was speeding, "disregarding what he admittedly knew to be the speed limit in the area." *Id.* While discussing the speeding violation, the officer detected the odor of alcohol and asked Mr. Ferreira if he had been drinking, and he replied affirmatively. Based on these circumstances, the Idaho Court of Appeals concluded the trooper had reasonable suspicion that Mr. Ferreira had violated that state's drunk-driving laws. *Id.*

[¶ 15] Similarly, the undisputed facts in this case, including the odor of alcohol, Mr. Batten's admission he had been drinking shortly before he was stopped, his inability to locate proof of insurance, and his knowing violation of a traffic law by driving with a broken headlight at night, support the hear-

---

**3.** Our application of the substantial evidence standard of review to the agency's factual findings distinguishes administrative cases from criminal cases where we review the district court's findings of fact regarding a claim of an illegal search or seizure under the clearly erroneous standard. *Moulton v. State*, 2006 WY 152, ¶ 13, 148 P.3d 38, 42 (Wyo.2006).

ing examiner's conclusion that the trooper had reasonable suspicion to further detain Mr. Batten in order to conduct field sobriety tests. We hold, therefore, the seizure of Mr. Batten for purposes of administering the field sobriety tests did not violate Mr. Batten's Fourth Amendment rights.

## 2. *Probable Cause*

[¶ 16] Mr. Batten also argues the hearing examiner erred by concluding Trooper Adams had probable cause to arrest him for driving while under the influence of alcohol. "Probable cause for a warrantless arrest exists when, under the totality of the circumstances, a prudent, reasonable, and cautious peace officer would be led to believe that a crime has been or is being committed and that the individual arrested is the perpetrator." *Keehn v. Town of Torrington,* 834 P.2d 112, 116 (Wyo.1992). Similar to the reasonable suspicion analysis, we apply the substantial evidence standard of review to the hearing examiner's factual findings concerning whether the trooper had probable cause to arrest, but review the constitutionality of the particular seizure *de novo. Bradshaw,* ¶ 24, 135 P.3d at 619; *Smith v. State ex rel. Wyo. Dep't of Transp.,* 11 P.3d 931, 937 (Wyo.2000); *Moulton,* ¶ 13, 148 P.3d at 42.[4]

[¶ 17] Mr. Batten argues the trooper did not have probable cause to arrest him because the portable breath test was improperly administered and the results of the field sobriety tests were inconclusive. During the contested case hearing, he challenged the trooper's use of the portable breath test at the scene of the stop, arguing that administration of the test prior to an arrest violated the implied consent statute. The hearing examiner specifically ruled that he would not consider the portable breath test result "for any purpose." We do not need to delve into whether the portable breath test was properly administered or whether it was admissible for the purposes of determining probable

cause because we are able to affirm the hearing examiner's probable cause ruling without taking the results of that test into account.

[¶ 18] Our case law has consistently condoned the use of field sobriety tests in determining whether probable cause exists to support an arrest for DWUI. *See, e.g., Bradshaw,* ¶ 25, 135 P.3d at 619–20; *Smith,* 11 P.3d at 935–36. The hearing examiner made the following factual findings concerning Mr. Batten's performance on the field sobriety tests:

> On the Horizontal Gaze, the Licensee showed lack of smooth pursuit, onset prior to forty-five degrees, and nystagmus at maximum deviation in both eyes. On the one leg stand, the trooper reported that the Licensee put his foot down at the count[s] of 3, 4, 5, 6 and 28, raised his arms and swayed. The Licensee missed the number 27 when counting and said two numbers twice while counting. On the walk and turn, the trooper reported that Licensee started too soon, missed heel to toe several times, and raised his arms for balance. In watching the video tape, the Office also notes that Licensee said the numbers 12 and 21 twice during the one leg stand and that he stepped out of position and started too soon on the walk and turn maneuver.

[¶ 19] The agency record, including the trooper's report and a video tape of the stop which Mr. Batten introduced into evidence at the contested case hearing, supports the hearing examiner's factual findings. In addition to the information recited in the hearing examiner's findings of fact, the trooper's report indicated Mr. Batten's eyes were bloodshot and watery and his performance on the horizontal gaze nystagmus test resulted in six out of a possible six clues indicating impairment. The report also stated that the one leg stand test resulted in three clues of impairment and the walk and turn test

---

4. The standard of review recited here is a refinement of the standard applied in other driver's licenses cases where we simply reviewed the hearing examiner's probable cause determination for substantial evidence. *See, e.g., Bradshaw,* ¶ 11, 135 P.3d at 616. *Smith v. State ex* *rel. Wyo. Dep't of Transp.,* 11 P.3d 931, 934 (Wyo.2000). We continue to follow the long standing rule that the ultimate question of whether a search or seizure violated the constitution is a question of law, which we review *de novo.*

showed two clues. The report further indicated that Mr. Batten was swaying and stated his balance was poor. This evidence all supported the hearing examiner's ultimate finding that Mr. Batten's performance on the field sobriety tests was "poor."

[¶ 20] Mr. Batten argues that the video tape does not support some of the trooper's findings. For example, he states that he did not raise his arms high enough during the one leg stand or walk and turn tests to qualify as indicators of impairment. Our job is not to re-weigh the evidence or determine credibility of witnesses. That is the responsibility of the finder of fact. *See, e.g., Bruns v. TW Services, Inc.*, 2001 WY 127, ¶ 26, 36 P.3d 608, 617 (Wyo.2001). On this record, we have no difficulty determining there was substantial evidence to support the hearing examiner's findings of facts, including his finding that Mr. Batten's performance on the field sobriety tests was poor.

[¶ 21] The hearing examiner's factual findings all support the legal conclusion that the trooper had probable cause to arrest Mr. Batten for driving while under the influence of alcohol. Given the results of the field sobriety tests and the other indicators discussed above, a prudent, reasonable, and cautious peace officer would have believed that Mr. Batten had committed the crime of driving while intoxicated. We rule, as a matter of law, probable cause existed to sustain the trooper's warrantless arrest of Mr. Batten.

[¶ 22] Affirmed.