2011 WY 100

**Richard VASCO, Appellant (Petitioner),**

v.

**The STATE of Wyoming, DEPARTMENT OF TRANSPORTATION, Appellee (Respondent).**

No. S–10–0235.

Supreme Court of Wyoming.

June 27, 2011.

Representing Appellant: R. Michael Vang of Fleener & Vang LLC, Laramie, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]  Richard Vasco was arrested for interference with a police officer and for driving under the influence of alcohol.  He refused to submit to chemical testing, and the Wyoming Department of Transportation (WYDOT) advised him that it was suspending his driver's license for six months.  He requested a hearing, at the conclusion of which the Office of Administrative Hearings (OAH) upheld the suspension.  Mr. Vasco sought review in the district court, which affirmed the OAH order.  Mr. Vasco appealed to this Court, claiming the arresting officer lacked probable cause to arrest him.  We affirm.

## ISSUE

[¶ 2]  The issue for our determination is whether probable cause existed to arrest Mr. Vasco for interference, such that the evidence that he had been driving under the influence of alcohol obtained thereafter was admissible and sufficient to support suspending his driver's license.

## FACTS

[¶ 3]  On October 9, 2009, Laramie Police Officer Matthew Leibovitz responded to a report of a hit-and-run accident.  While en route, he learned that the driver had left the accident scene on foot.  He also learned that the vehicle involved, a 2008 black Nissan Titan, was registered to Richard Vasco who resided at an apartment on Baker Street in Laramie.  After confirming that other officers were at the accident scene, Officer Leibovitz went to the Baker Street address.  No one answered at the residence but Officer Leibovitz observed a man walking toward the apartment complex.  Having had previous contact with him, the officer recognized the man as Mr. Vasco.

[¶ 4]  Officer Leibovitz approached and asked Mr. Vasco to identify himself.  Mr. Vasco responded that he was "Christopher" and attempted to walk past the officer.  Officer Leibovitz told him to stop, advised him that he was investigating a hit-and-run accident and asked him for identification.  Mr. Vasco produced his wallet, opened it enough to show a driver's license, but closed it before the officer could read the driver's license.  Officer Leibovitz asked him three more times for identification; each time, Mr. Vasco produced, opened and closed the wallet before the officer could read the driver's license.

[¶ 5]   During this exchange, Officer Leibovitz smelled alcohol on Mr. Vasco's breath and noticed his eyes were red and glassy and he was swaying.   He asked Mr. Vasco where he was coming from; Mr. Vasco could not provide an answer.   He asked Mr. Vasco if he had been driving recently; Mr. Vasco said he had not been.   He asked Mr. Vasco where his vehicle was; Mr. Vasco did not answer. Mr. Vasco kept saying that he was going inside and attempting to walk past Officer Leibovitz.

[¶ 6]   Officer Leibovitz again told Mr. Vasco to stay put and informed him that he was a suspect in the hit-and-run accident. He told Mr. Vasco that if he did not provide identification he would take him into custody for interfering with a police officer.   Mr. Vasco nudged by him, stating "Let's go into my residence."   Officer Leibovitz placed him under arrest for interference and searched him.   In Mr. Vasco's rear pocket, he found a set of keys with a Nissan remote control. He later confirmed that the keys belonged to the black Nissan Titan involved in the accident.

[¶ 7]   Officer Leibovitz took Mr. Vasco to the detention center.   He read the Wyoming implied consent advisement to him and Mr. Vasco refused to submit to a breath test. The officer issued citations for DUI, interference, hit-and-run and failure to maintain automobile liability insurance.[1]

[¶ 8]   Subsequently, WYDOT gave notice to Mr. Vasco that it was suspending his driver's license for six months because of his refusal to submit to a chemical test.   Mr. Vasco requested a hearing.   At the hearing, he argued that Officer Leibovitz did not have probable cause to arrest him for interference or DUI.   The OAH found otherwise and issued an order upholding the suspension. Mr. Vasco sought review in the district court, which affirmed the OAH order.   Mr. Vasco then appealed to this Court.

### STANDARD OF REVIEW

■■■■   [¶ 9]   We accord no deference to a district court decision reviewing an adminis-

trative agency order.   *Batten v. Wyo. Dep't of Transp. Drivers' License Div.*, 2007 WY 173, ¶ 6, 170 P.3d 1236, 1239 (Wyo.2007). Instead, we review the case as if it came directly from the administrative agency.   *Id.* As provided by Wyo. Stat. Ann. § 16–3–114(c)(ii)(E) (LexisNexis 2009), we apply the substantial evidence standard when reviewing an agency's evidentiary findings.   When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions.   *Schouboe v. Wyo. Dep't of Transp.*, 2010 WY 119, ¶ 5, 238 P.3d 1246, 1248 (Wyo.2010), quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, 188 P.3d 554 (Wyo.2008).   On the question of probable cause, we apply the substantial evidence standard of review to the hearing examiner's factual findings concerning whether the trooper had probable cause to arrest, but review the constitutionality of the particular seizure *de novo.*   *Batten v. Wyo. Dep't of Transp. Drivers' License Div.*, 170 P.3d 1236, 1240 (Wyo.2007).

### DISCUSSION

■■■   [¶ 10]   Wyoming's implied consent statutes which gave rise to the suspension of Mr. Vasco's driver's license and the administrative hearing in this case provide in relevant part as follows:

§ 31–6–102.   **Test to determine alcoholic or controlled substance content of blood; suspension of license.**

(a) *If arrested for an offense as defined by W.S. 31–5–233* [DUI]:

(i) *Any person who drives or is in actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent,* subject to the provisions of this act, *to a chemical test or tests ... or controlled substance content of his blood.   The test or tests shall be:*

(A) *Incidental to a lawful arrest;*

---

1.   The officers at the accident scene advised Officer Leibovitz that the proof of insurance found in the black Nissan Titan was expired.

(B) Given as promptly as possible after the arrest;

(C) *Administered at the direction of a peace officer who has probable cause to believe the person was driving or in actual physical control of a motor vehicle upon a public street* or highway in this state in violation of W.S. 31–5–233(b) or any other law prohibiting driving under the influence as defined by W.S. 31–5–233(a)(v).

\* \* \* \*

(ii) For tests required under this act, *the arrested person shall be advised that:*

*(A) His failure to submit to all required chemical tests requested by the peace officer shall result in the suspension of his Wyoming driver's license* or his privilege to operate a motor vehicle for a period of six (6) months for a first offense or eighteen (18) months for a second or subsequent offense and he may be required to drive only vehicles equipped with an ignition interlock device as provided by W.S. 31–6–107;

\* \* \* \*

*(d) If a person under arrest refuses upon the request of a peace officer to submit to a chemical test* designated by the agency employing the peace officer as provided in subsection (a) of this section, none shall be given except in cases where serious bodily injury or death has resulted. *The peace officer shall submit his signed statement to the department. The statement submitted by the officer shall contain:*

*(i) His probable cause to believe the arrested person was driving or in actual physical control of a motor vehicle:*

(A) On a public street or highway in this state;

(B) In violation of W.S. 31–5–233(b) or any other law prohibiting driving under the influence as defined by W.S. 31–5–233(a)(v); and

(ii) That the person refused to submit to a test upon the request of the peace officer.

\* \* \* \*

(f) In addition to the signed statement submitted under subsection (d) . . . of this section, the peace officer shall issue the person a temporary license . . . contain[ing] a notice that the person has twenty (20) days from the date of issuance within which to request a hearing from the department. . . .

(Emphasis added.)

§ **31–6–103. Application for hearing; stay of suspension of license; scope of hearing**

(a) A timely request for a hearing shall stay the suspension until the order following the hearing is entered and all appellate review of the matter is completed, provided the stay of suspension is effective only so long as there is no suspension for a similar violation during the hearing and appeal period.

(b) *The scope of a hearing for the purposes of this act shall cover the issues of whether a peace officer had probable cause to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon a public* street or highway in this state in violation of W.S. 31–5–233(b) or any other law prohibiting driving under the influence as defined by W.S. 31–5–233(a)(v), *whether the person was placed under arrest, whether he refused to submit to a test upon request of the peace officer* or if he submitted to a test whether the test results indicated that the person had an alcohol concentration of eight one-hundredths of one percent (0.08%) or more, and whether, except for the persons described in this act who are incapable of refusing, he had been given the advisements required by W.S. 31–6–102(a)(ii). At the conclusion of the hearing, the hearing examiner shall order that the suspension either be rescinded or sustained. . . .

(Emphasis added.)

[¶ 11] Pursuant to § 31–6–102(a)(i)(A) and (C), a chemical test was to be administered to Mr. Vasco incidental to a lawful arrest and at the direction of a police officer having probable cause to believe Mr. Vasco had been driving while under the influence of alcohol. Subsection (a)(ii) required the officer to advise Mr. Vasco that his failure to submit to chemical testing would result in

suspension of his license. When Mr. Vasco refused the test, the officer was required pursuant to § 31–6–102(d) to submit a statement containing his probable cause to believe Mr. Vasco was driving under the influence and provide notice to Mr. Vasco pursuant to § 31–6–102(f) that he could request a hearing to determine under § 31–6–103(b) whether probable cause existed to believe he was driving under the influence. Clearly, the implied consent statutes are invoked when an officer lawfully arrests an individual with probable cause to believe he was driving under the influence.

[¶ 12] Mr. Vasco contends his arrest for interference with a police officer was unlawful because Officer Leibovitz lacked probable cause for the arrest. He argues further that because the interference arrest was unlawful, all of the evidence obtained thereafter was tainted and should have been suppressed. Because the suspension of his driver's license depended upon a lawful arrest for DUI and the evidence giving rise to his DUI arrest resulted from an unlawful interference arrest, Mr. Vasco submits, the fruit of the poisonous tree doctrine barred the evidence of either arrest and the suspension of this license must be rescinded.

[¶ 13] Addressing the fruit of the poisonous tree doctrine, we have said:

> When law enforcement obtains evidence through unlawful search or seizure, that evidence is inadmissible against the victim of the unlawful action. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). This long-standing remedy for the accused is necessary to give effect to the fundamental protections against unreasonable search and seizure. *Id.* "[I]f the initial search is held improper, not only the evidence obtained by such search but everything which becomes accessible to the prosecution by reason of the initial search would be inadmissible as 'a fruit of the poisonous tree.'"

*Hall v. State*, 2007 WY 138, ¶ 7, 166 P.3d 875, 877 (Wyo.2007).

[¶ 14] As applied in the present case, if Officer Leibovitz lacked probable cause to arrest Mr. Vasco for interference, the subsequent search was improper and the evidence obtained in the search which supported the DUI arrest was inadmissible. Mr. Vasco's assertion that probable cause did not exist to arrest him for interference is based upon several contentions: first, even if he "nudged" the officer, a nudge does not constitute interference with a police officer; second, he had the right not to incriminate himself and consequently the right not to speak to the officer; third, even if he did provide a false name, doing so did not interfere with the investigation because Officer Leibovitz said he knew his real name; and fourth, the officer's statement that Mr. Vasco invited him into his apartment refutes the assertion that he was interfering with the investigation. The State responds that the totality of the circumstances supported the OAH determination that probable cause existed to support the arrest and suspension of Mr. Vasco's license.

[¶ 15] We begin by considering whether probable cause existed to support Mr. Vasco's arrest for interference with a police officer. Probable cause for a warrantless arrest exists when, under the totality of the circumstances, a prudent, reasonable, and cautious peace officer would be led to believe that a crime has been or is being committed and the individual arrested is the perpetrator. *Bradshaw v. Wyo. Dep't of Transp. Drivers' License Div.*, 2006 WY 70, ¶ 18, 135 P.3d 612, 618 (Wyo.2006). Officer Leibovitz arrested Mr. Vasco for violating Laramie Municipal Ordinance § 9.04.030, which provides in pertinent part:

> No person shall resist any police officer ... in the discharge of his duties or in any way interfere with or hinder or prevent him from discharging his duty ... or endeavor to do so.[*] [*] [*] [*] [2]

---

**2.** Wyo. Stat. Ann. § 6–5–204(a) (LexisNexis 2009) similarly provides:

(a) A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000), or both, if he knowingly obstructs, impedes or interferes with ... a peace officer while engaged in the lawful performance of his official duties.

[¶ 16]   The State had the burden of proving probable cause existed to arrest Mr. Vasco for interference.   The State's submission of the certified record in a driver's license suspension contested case proceeding has been deemed sufficient to establish a prima facie case and to shift the burden to the petitioner to provide evidence to refute the prima facie case.  *Schouboe*, ¶ 8, 238 P.3d at 1248.   Thus, we consider whether the certified record established a prima facie case of interference with a police officer.

[¶ 17]   From the totality of the circumstances, we conclude a prudent, reasonable and cautious peace officer would have been led to believe that Mr. Vasco was resisting, interfering, hampering or preventing the discharge of his duties.   When Officer Leibovitz asked him for identification, Mr. Vasco gave a false name and attempted to walk past the officer.   Officer Leibovitz told him to stop, informed him that he was investigating a hit and run accident and asked again to see some identification.   Mr. Vasco hindered the officer's efforts by opening, closing and putting his wallet back in his pocket several times without letting the officer see his driver's license.   He also disregarded the officer's order to stay where he was and answer questions by attempting to go inside his apartment.   After Officer Leibovitz warned him that he would be arrested for interference if he did not produce his driver's license, Mr. Vasco nudged past him and headed for his apartment.   By these acts, Mr. Vasco gave the officer probable cause to believe that he was hindering him from discharging his duty to investigate the hit-and-run accident.   Officer Leibovitz had probable cause to arrest Mr. Vasco for interference with a police officer.

[¶ 18]   Officer Leibovitz also had probable cause to believe Mr. Vasco had been driving under the influence of alcohol.   At the time the officer stopped and questioned Mr. Vasco, he knew the Nissan truck involved in the hit-and-run accident was registered to Mr. Vasco and the driver had left the scene on foot.   Additionally, he had seen Mr. Vasco, who he knew from previous contact, walking from the direction of the accident toward his apartment.   Upon stopping and questioning him, the officer smelled alcohol on Mr. Vasco's breath and noticed his eyes were red and he was swaying.   After arresting him for interference, the officer searched Mr. Vasco and found a set of keys with a Nissan remote control.   The officer subsequently confirmed that the keys belonged to the Nissan involved in the accident.   Additionally, he learned that another officer had found a beer bottle on the ground outside the passenger door of the Nissan and that the beer bottle fell out when the person whose vehicle the Nissan hit went looking for the driver and opened the passenger door.   With that information, Officer Leibovitz had probable cause to believe that Mr. Vasco had been driving the Nissan while under the influence of alcohol and was required to advise Mr. Vasco, who was then lawfully under arrest, in accordance with the Wyoming implied consent statutes.

[¶ 19]   Although not mentioned in his statement of the issues, Mr. Vasco also asserts the OAH improperly disregarded his testimony and that of the only disinterested witness, a neighbor the police spoke to that evening who observed Mr. Vasco's interaction with Officer Leibovitz.   She testified that Mr. Vasco patted his pockets but produced nothing when the officer asked him for identification; it did not appear to her that the officer recognized Mr. Vasco; and it did not appear that Mr. Vasco touched the officer as he walked by him.   We have said:

> If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test.

*Schouboe*, ¶ 5, 238 P.3d at 1248.

[¶ 20]   In its order, the OAH stated that it gave no weight to Mr. Vasco's testimony because he compromised his credibility when he testified that he was not driving his Nissan on the night of the accident, said he did not know who was driving it, and then said

he misunderstood the question and, in fact, was driving the vehicle that night. The OAH also found the neighbor's testimony insufficient to rebut the facts contained in Officer Leibovitz' report. Having reviewed the record, we conclude substantial evidence supports the OAH decision.

[¶ 21]   Affirmed.