2016 WY 55

Marvin CLAY, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

S-15-0240

Supreme Court of Wyoming.

May 27, 2016

Representing Appellant: Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Public Defender

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director; Bradford H. Coates, Student Director; and Chika Kodaka, Student Intern, of the Prosecution Assistance Program

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

DAVIS, Justice.

[¶1] Appellant Marvin Clay challenges the denial of his motion to suppress evidence

supporting a conviction for driving under the influence of alcohol. We affirm.

## ISSUE

[¶2] Did the district court err in denying Appellant's motion to suppress?

## FACTS

[¶3] In the late evening of December 19, 2014, a Cheyenne police officer stopped Appellant's car after it exited the parking lot of the Eagle's Nest Bar in Cheyenne, Wyoming. From that point on, the facts are disputed in certain respects, and we will first recount the State's version of the events. The officer testified that he made the stop because the car did not have any license plates displayed. All he could see at that point was a white piece of paper in the upper left corner of the rear window, which was heavily tinted.[1]

[¶4] Because he was unable to verify that the white piece of paper was a document which would allow Appellant to operate the vehicle temporarily, the officer approached the car and talked to him. He asked about the paper and if there was a bill of sale. The document in the window turned out to be a title, but more than forty-five days had elapsed since the transfer, and the officer could not tell if it was notarized, both of which were required for operation of the vehicle to be legal. Appellant said there was a bill of sale, and opened his wallet and started thumbing through it for that document, but he never pulled anything out. Appellant could not provide a driver's license or proof of insurance either.

[¶5] Within the first minute of Appellant slowly flipping through his wallet, the officer observed signs of possible intoxication. A slight odor of alcohol emanated from the vehicle. There was also an empty vodka bottle on the rear seat. Appellant would not look up at the officer, who also observed that his motor skills appeared to be "real, real slow." The officer was able to obtain Appellant's name and date of birth. After he returned to his vehicle to run a check (presumably for warrants) on the identification he had, he contacted another officer who was working on the DUI Task Force that evening.

[¶6] The DUI Task Force officer quickly arrived, and he observed that Appellant smelled heavily of alcohol, and his speech was slurred and his eyes were glazed. Consequently, he was asked to perform three standard field sobriety tests.[2] He performed poorly on all three, and the DUI Task Force officer arrested him for driving under the influence of alcohol. An ensuing blood test revealed that Appellant's blood alcohol content was .18%, more than twice the legal limit.

[¶7] Appellant was ultimately charged, *inter alia*, with Driving Under the Influence, Fourth Offense, in violation of Wyo. Stat. Ann. § 31–5–233 (LexisNexis 2013).[3] He eventually filed a motion to suppress the evidence against him. He claimed that his detention was improperly expanded beyond the scope of the initial traffic stop because it was improper for the officer to contact him after he looked at the paper in question after the stop. At the hearing on that motion, Appellant challenged the initial stop as well.

[¶8] The officer who initially stopped Appellant testified that although it is legal to drive with only a notarized title or bill of sale for forty-five days after purchase, he could not tell from the outside of the rear window whether the title was notarized, and it appeared to document a sale that took place outside the 45-day window. He thus had to make contact with Appellant to investigate further.[4]

---

1. This document is not in the record, and therefore we are left only with somewhat obscure and conflicting testimony about it.

2. The tests were (1) the horizontal gaze nystagmus, (2) the one leg stand, and (3) the walk and turn.

3. Conviction of a fourth DUI within ten years is a felony conviction which carries a possible term of imprisonment for up to seven years and a $10,000 fine. Wyo. Stat. Ann. § 31–5–233(e).

4. Wyo. Stat. Ann. § 31–2–201(a)(ii)(C) (LexisNexis 2013), which was in effect at the time, allowed a motorist to operate a vehicle for forty-five days after transfer if title was held by a bank or financial institution or if the transferor was an auctioneer of the vehicle, provided that the owner had a notarized bill of sale. *Id.*, cross-referencing § 31–2–104. The statute was amended effec-

[¶9] Appellant, on the other hand, testified that he had purchased the car in Utah only twenty days earlier, and that he had a bill of sale that was located in the back license plate bracket, not in the tinted rear window as the officer had said. Appellant admitted that the car windows were very darkly tinted, and he also conceded on cross-examination that he had in fact been drinking that day.

[¶10] Having heard from both parties and considered the evidence, the district court denied Appellant's motion to suppress. It found that the officer's testimony was credible and the Appellant's was not. The judge explained that

> [t]he stop was predicted on reasonable suspicion the vehicle was being driven without registration. Wyo. Stat. Ann. § 31-4-101. Under either the officer's or the Defendant's version the registration could not be seen and understood by the officer.

[¶11] The judge next ruled that the search and arrest were valid, noting "[t]he officer observed a number of matters upon approaching and inquiring of the Defendant, including an odor of an alcoholic beverage, an empty vodka bottle, and a driver evasive of eye contact and demonstrating poor motor skills."

[¶12] Shortly thereafter, the parties reached a plea agreement. Appellant entered a conditional plea of guilty to felony (fourth offense) driving under the influence. The agreement and plea reserved his right to appeal the district court's ruling on the suppression motion. The district court imposed a sentence of five to seven years incarceration, which was suspended in favor of five years supervised probation.

[¶13] Appellant timely perfected this appeal.

tive January 1, 2016 by 2015 Wyo. Sess. Laws ch. 31, § 1. The record is somewhat inscrutable as to the nature of the transfer to Appellant, but it appears that the officer gave him the benefit of the doubt, as § 31-4-201(a)(ii)(D), which was in effect at the time, allowed a transferee to operate a vehicle for only thirty days, and then only with a "properly executed title."

5. The Fourth Amendment to the United States Constitution states:

## STANDARD OF REVIEW

[¶14] Our standard of review of the denial of a motion to suppress is as follows:

> We review the district court's factual findings on a motion to suppress for clear error. We defer to those findings and view the evidence in the light most favorable to the prevailing party because the district court is in the best position to weigh the evidence, assess the credibility of witnesses, and make the necessary inferences, deductions, and conclusions. However, we review the ultimate determination regarding the constitutionality of a particular search or seizure de novo.

*Allgier v. State*, 2015 WY 137, ¶ 11, 358 P.3d 1271, 1275 (Wyo. 2015) (quotation marks omitted).

## DISCUSSION

[¶15] Appellant asserts that the traffic stop violated his Fourth Amendment [5] rights to be protected from search and seizure without a warrant under the United States Constitution. He does not argue in this appeal that the initial stop was improper. However, he says that his detention was improperly expanded beyond the scope of the initial traffic stop; that is, the officer's right to detain Appellant was limited to the time reasonably necessary to investigate the reasons for the initial stop. He contends that the evidence used to support the DUI arrest was discovered only after the unnecessary contact and therefore ought to have been suppressed.

[¶16] This Court has explained that "[t]here are three tiers of interaction between police and citizens under the Fourth Amendment—consensual encounter, investigatory detention and arrest." *Dimino v. State*, 2012 WY 131, ¶ 10, 286 P.3d 739, 742

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
>
> U.S. Const. amend. IV.

(Wyo. 2012). Traffic stops like the one in this case are analogous to a second tier investigatory detention and are sometimes called *Terry* stops. *Id.; see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because traffic stops are investigatory detentions, the stop must be temporary and must last no longer than necessary to effectuate its purpose. *Dimino*, ¶ 10, 286 P.3d at 742. "The officer may expand the investigative detention beyond the scope of the initial stop only if the citizen consents to the expanded detention or if there exists an objectively reasonable suspicion that criminal activity has occurred or is occurring." *Id.* (quotation marks omitted).

■ [¶17] This Court recently made it clear that the correct standard to justify a traffic stop is "reasonable suspicion." *Allgier*, ¶ 14, 358 P.3d at 1276 (citing *Heien v. North Carolina*, — U.S. —, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014)). In *Allgier*, we highlighted the United States Supreme Court's latest explanation:

> A traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. To justify this type of seizure, officers need only reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law. The ultimate touchstone of the Fourth Amendment is reasonableness. To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection.

*Allgier*, ¶ 14, 358 P.3d at 1276 (quoting *Heien*, — U.S. —, 135 S.Ct. at 536 (citations and quotation marks omitted)). "Reasonable suspicion is a lower standard than probable cause and requires a fact-centered inquiry based upon the 'totality of the circumstances.'" *Allgier*, ¶ 14, 358 P.3d at 1276

(quoting *Venegas v. State*, 2012 WY 136, ¶ 9, 287 P.3d 746, 749 (Wyo. 2012)).

[¶18] The validity of the initial stop is not really an issue, but we touch upon it briefly since to some extent the reason for it influences the analysis of what happened afterward. As noted above, we defer to the trial court's findings of fact unless they are clearly erroneous. The district court found the testimony of the police officer making the stop to be credible. That testimony was that he initially pulled over Appellant because his car had no license plates and the piece of paper in the rear window was obscured due to the window's dark tint. Appellant admits that his car windows were "smoke tinted, real dark, real tinted," which unavoidably obstructed the piece of paper's visibility. The officer suspected that Appellant was in violation of Wyoming law requiring license plates or a valid registration to be displayed and plainly visible on a vehicle. Wyo. Stat. Ann. § 31-2-205(a)(i) (LexisNexis 2015) (requiring license plates to be "conspicuously displayed and securely fastened to be plainly visible" on the front and back of the vehicle); Wyo. Stat. Ann. § 31-4-101 (LexisNexis 2015) (prohibiting any person from knowingly operating a vehicle without license plates, valid certificate of title and certificate of registration or temporary permits); Wyo. Stat. Ann. § 31-2-201(a)(ii)(B) (LexisNexis 2015) (providing that registration of a vehicle must by obtained within forty-five days after transfer of ownership from an out-of-state dealer).[6]

[¶19] The record supports the district's court's conclusion that at that point the officer had a particularized and objective basis for suspecting that Appellant was breaking the law, and that he could properly stop the vehicle to investigate further. Thus, the stop was justified by reasonable suspicion, the standard required by the Fourth Amendment for such an investigatory detention.

■ [¶20] The real question in this appeal is whether the officer needed to make contact with Appellant after the stop. Appellant says that the necessary paperwork for the vehicle

---

6. We note that amendments to Wyo. Stat. Ann. § 31-2-201 went into effect on January 1, 2016, which extended the time to register from forty-five to sixty days. *See* 2015 Wyo. Sess. Laws ch.

31. Appellant's traffic stop occurred before the amendment; therefore, the 45-day time period applies.

was displayed on the car and could have been examined without any need for the officer to speak with him. Based upon this premise, Appellant contends that evidence that he was intoxicated was only developed after the unnecessary contact and that therefore the evidence should have been suppressed. Our review of the record confirms the contrary.

[¶21] Although the district court did not make any specific finding in this respect, the record establishes that the officer could not dispel his suspicion that the vehicle was being driven without a license plate or a temporary substitute allowed by statute. He testified that the piece of paper displayed in the back window was a title that showed that more than forty-five days had passed since the purchase of the car. The officer also testified that he could not tell if the document was notarized, which it was required to be in order to allow lawful temporary operation of the vehicle. Therefore, the officer needed to speak with Appellant about the title displayed in the window.[7] In other words, the officer's reason to approach the car and speak with Appellant was directly related to the purpose for the initial stop and within the scope of it. *Engdahl v. State*, 2014 WY 76, ¶ 11, 327 P.3d 114, 117 (Wyo. 2014).

[¶22] Once contact was made with Appellant, the officer developed additional reasonable suspicion that Appellant might be intoxicated almost immediately. *See supra* ¶¶ 5-6. This allowed the investigative detention to extend beyond the scope of the initial traffic stop. *See Dimino*, ¶ 10, 286 P.3d at 742. That evidence, along with the results of subsequent tests conducted by the DUI Task Force officer, stemmed from an investigatory detention that was constitutional.

[¶23] Affirmed.

---

**7.** While Appellant testified that the paper bill of sale was located in the back license plate bracket and not in the rear tinted window, the district court found the officer's testimony more credible. On appeal, Appellant does not challenge the district court's findings of fact, thus, we need not even consider whether any of the findings are clearly erroneous. *See Poitra v. State*, 2016 WY 20, ¶ 22, 368 P.3d 284, 289 (Wyo. 2016). We also do not need to address Appellant's argument that a law enforcement officer who could verify that there was a valid notarized bill of sale that permitted lawful operation of the vehicle would have had to just drive away without speaking to the driver. *Cf. United States v. Edgerton*, 438 F.3d 1043, 1051 (10th Cir. 2006) (examining *United States v. McSwain*, 29 F.3d 558, 561-62 (10th Cir. 1994)).