# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 84

APRIL TERM, A.D. 2024

August 6, 2024

AMY V. ROMERO,

Appellant
(Petitioner),

v.

STATE OF WYOMING ex rel.,
WYOMING DEPARTMENT OF
TRANSPORTATION,

Appellee
(Respondent).

S-24-0002

*Appeal from the District Court of Carbon County*
The Honorable Dawnessa A. Snyder, Judge

*Representing Appellant:*
R. Michael Vang, R. Michael Vang P.C., Laramie, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Christina McCabe, Deputy Attorney General; Michael T. Kahler, Senior Assistant Attorney General; MacKenzie A. Sewell, Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**JAROSH, Justice.**

[¶1]    Amy Romero was arrested for driving while under the influence of alcohol (DWUI). She appeals the district court's order upholding the Office of Administrative Hearings' (OAH) suspension of her driver's license pursuant to Wyo. Stat. Ann. § 31-6-102(e) (LexisNexis 2023).  Ms. Romero asserts on appeal a police officer unlawfully arrested her by placing her in the back of his patrol car during his investigation, and as a result the evidence obtained thereafter was improper.  We affirm.

## ISSUE

[¶2]    Ms. Romero states the issue as whether the OAH erred by suspending her driver's license because she was unlawfully arrested without probable cause when Officer Phillips placed her in the back of his patrol car and the evidence obtained during the illegal seizure should have been suppressed.

[¶3]    The following issue is dispositive of Ms. Romero's appeal:

> Was the OAH's conclusion that Officer Phillips lawfully detained Ms. Romero in the back of his patrol car for a DWUI investigation in accordance with the law and supported by substantial evidence?

## FACTS

[¶4]    On January 6, 2023, Rawlins Police Department Officer George Phillips noticed a pickup truck stuck in a snowbank and blocking a lane of travel.  Upon arrival at the scene, he heard a man "aggressively yelling" at a female to stay with him.  Officer Phillips called dispatch to report a motorist assist and parked his patrol car.  After exiting his car, he encountered a woman, later identified as Ms. Romero, walking toward his vehicle and he asked, "What's up?"  When Ms. Romero responded, Officer Phillips smelled a "very strong overwhelming odor of alcohol."

[¶5]    Officer Phillips continued past Ms. Romero and toward the pickup, where he observed a male, later identified as Joseph Romero.  After asking Mr. Romero to approach, Officer Phillips asked who was driving the truck, and Ms. Romero stated she was.  Officer Phillips radioed for cover and then asked Mr. Romero for identification and Ms. Romero for her driver's license.  Mr. Romero responded, "Why do you need mine?" while Ms. Romero stated she did not have her purse.  Officer Phillips then asked Mr. Romero if Ms. Romero was driving.  Mr. Romero responded, "Yes," and Ms. Romero stated, "I am driving, yes."  According to Officer Phillips, "it was apparent [the Romeros had] been drinking alcohol that night."

1

[¶6]     Officer Phillips was unsure if the individuals were in a domestic dispute considering the yelling he initially heard, so he asked Ms. Romero to speak with him by his patrol car and told Mr. Romero to remain by the pickup.  After separating Mr. and Ms. Romero, Officer Phillips asked Ms. Romero how much she had had to drink.  He repeated his question multiple times, and each time Ms. Romero failed to answer directly:

> Officer Phillips:  How much alcohol have you had today?
> Ms. Romero:  What does that mean?
> Officer Phillips:  How much alcohol have you "drinken?"
> Ms. Romero:  What does that mean?
> Officer Phillips:  What do you mean, "what does that mean?"
> Ms. Romero:  What's that mean?
> Officer Phillips:  How many drinks have you had?
> Ms. Romero:  In hours or 25 seconds or … Phillips.
> Officer Phillips:  How much have you had to drink before you started driving?
> Ms. Romero:  We'll just do the tests; it's fine.
> Officer Phillips:  What's that?
> Ms. Romero:  We'll do all the tests; we'll figure it out.

Officer Phillips believed Ms. Romero did not want to directly answer his questions.

[¶7]     As Officer Phillips questioned Ms. Romero, Mr. Romero disregarded Officer Phillips' instruction to stand by the pickup truck and began to walk toward the patrol car. When Officer Phillips told Mr. Romero, "Can you stay back there by your truck for me?" Mr. Romero said, "Nah I'm good right here," to which Officer Phillips responded, "No you're not, go back there."

[¶8]     When Mr. Romero did not return to his truck, Officer Phillips again told Mr. Romero to go back to the pickup and walked him back there.  He radioed again for backup, stating, "Somebody try and get here because I'm trying to keep them separated."  Shortly after Mr. Romero returned to his pickup and Officer Phillips returned to attend to Ms. Romero by his patrol car, Mr. Romero stated, "[I am] a United States Marine, man; we got stuck.  [Inaudible]."  Ms. Romero shouted at Mr. Romero to "settle, babe, settle," and Mr. Romero responded, "No; I'm about to reach my limit."  Ms. Romero then told Mr. Romero, "Be careful," and Officer Phillips asked Mr. Romero, "What limit are you talking about?" Ms. Romero immediately interjected, "Nothing!"

[¶9]     At this point, Officer Phillips felt Mr. Romero was "about to become physically violent," so to try to deescalate the situation he told Ms. Romero to sit in the back of his patrol car.  Ms. Romero initially declined to get in the car, after which Officer Phillips repeated his instruction multiple times.  Mr. Romero briefly paced sideways and then approached Officer Phillips and Ms. Romero again.  When Mr. Romero reached the front

of the patrol car, Ms. Romero stated, "Babe, babe, stop, babe; alright, we'll just sit in the car." Ms. Romero got into the back of the patrol car, and Officer Phillips closed the door. He then again walked Mr. Romero back to the pickup and told him to turn around. When Mr. Romero refused and Officer Phillips attempted to turn him around, Mr. Romero said, "I will wreck you," and pushed Officer Phillips away, leading the two to fall to the ground in a physical altercation. After another officer arrived as backup and helped Officer Phillips subdue Mr. Romero, they arrested him for interference and placed him in the other officer's patrol car.

[¶10] Approximately five minutes later, Officer Phillips returned to his patrol car and told Ms. Romero, "We have to go to a dry environment to do your field sobriety test, OK?" Ms. Romero did not object and instead responded, "OK." Officer Phillips explained they were going to the Carbon County jail's sally port, which was "dry and warm and a flat surface." Officer Phillips transported Ms. Romero to the sally port, where she performed poorly on standard field sobriety tests, including failing to understand or obey instructions. Officer Phillips arrested Ms. Romero for DWUI. Ms. Romero consented to breath testing, which indicated a blood alcohol content of .22%.

[¶11] On January 9, 2023, the Wyoming Department of Transportation (WYDOT) sent Ms. Romero a Notice of Suspension of her driver's license based on her chemical test for blood alcohol content of 0.08% or greater. The notice informed Ms. Romero WYDOT was suspending her license for ninety days beginning on February 5, 2023, and that she was disqualified from holding a commercial driver's license for one year. Ms. Romero timely requested a contested case hearing with the OAH. On March 16, 2023, Ms. Romero submitted her Motion to Vacate and Rescind License Suspension (Motion to Vacate), asserting Officer Phillips unlawfully arrested her when he placed her in the back of his patrol car. Ms. Romero's contested case evidentiary hearing was set for April 4, 2023. Without objection, WYDOT submitted its certified record as an exhibit, but did not otherwise appear. Ms. Romero agreed to rely solely on her Motion to Vacate in lieu of live argument and entered the video from Officer Phillips' body camera as an exhibit. Neither party submitted any other evidence or argument.

[¶12] On April 13, 2023, the OAH issued its Findings of Fact, Conclusions of Law, Decision and Order Upholding Administrative Per Se Suspension (OAH Order), and stated in its conclusions of law:

> 23. This Office finds and concludes the evidence establishes that [O]fficer Phillips had sufficient reasonable, articulable suspicion sufficient to justify his detaining Licensee for a DWUI investigation, including his placing Licensee into his patrol vehicle and transporting Licensee to the Carbon County Jail/sally port for the purpose of administering SFSTs

3

[standard field sobriety tests], based upon the totality of all facts and circumstances then known to the officer as follows:

> a. The officer's observation and investigation into a vehicle stuck in a snowbank which was blocking a lane of travel, and upon his arrival, hearing a male voice aggressively yelling at a female and not knowing whether or not there was a domestic physical or only a verbal argument taking place.

> b. The officer's observation of both Licensee and her husband exhibiting signs of having been drinking alcohol and the strong odor of alcohol coming from Licensee's breath as he was speaking to her and Licensee admitting that she had been the driver of the vehicle that was stuck in the snowbank.

> c. Licensee agreeing to submit to SFSTs and the officer having to place her into his patrol vehicle so that he could deescalate the situation with Licensee's uncooperative and threatening husband resulting in the officer having to then transport Licensee to the jail to continue his investigation and ultimate arrest of Licensee.

[¶13] Ms. Romero petitioned the district court for review of the OAH Order, and it affirmed. This appeal followed.

## STANDARD OF REVIEW

[¶14] "We accord no deference to a district court decision reviewing an administrative agency order." *Vasco v. State, Dep't of Transp.,* 2011 WY 100, ¶ 9, 253 P.3d 515, 517 (Wyo. 2011) (citing *Batten v. Wyo. Dep't of Transp. Drivers' License Div.,* 2007 WY 173, ¶ 6, 170 P.3d 1236, 1239 (Wyo. 2007)). "Instead, we review the case as if it came directly from the administrative agency." *Id.* The Wyoming Administrative Procedure Act governs our review:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>> (i) Compel agency action unlawfully withheld or unreasonably delayed; and

4

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114 (LexisNexis 2023).

[¶15] When reviewing an agency's factual findings under § 16-3-114(c)(ii)(E), we apply the substantial evidence standard. *McCallister v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 66, ¶ 8, 510 P.3d 1051, 1054 (Wyo. 2022). "Findings of fact are supported by substantial evidence if there is relevant evidence in the record which 'a reasonable mind might accept in support of the agency's conclusion.'" *Id.* (quoting *Dale v. S&S Builders, LLC*, 2008 WY 84, ¶ 11, 188 P.3d 554, 561 (Wyo. 2008)). This Court must determine whether there is substantial evidence to support the agency's decision by considering "whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole." *Dale*, ¶ 22, 188 P.3d at 561. We defer to the administrative agency's factual findings unless they are clearly contrary to the overwhelming weight of the evidence in the record. *Camacho v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 92, ¶ 23, 448 P.3d 834, 843 (Wyo. 2019).

[¶16] "'We review an agency's conclusions of law *de novo* [ ] and will affirm only if the agency's conclusions are in accordance with the law.'" *McCallister*, ¶ 8, 510 P.3d at 1054-55 (quoting *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 13, 259 P.3d 1161, 1164 (Wyo. 2011) (other citations omitted)).

**DISCUSSION**

[¶17] Wyo. Stat. Ann. § 31-6-103(b) (LexisNexis 2023) limits the OAH's scope of review in driver's license suspension cases to the following:

[W]hether a peace officer had probable cause to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon a public street or highway in

5

this state in violation of W.S. 31-5-233(b) or any other law prohibiting driving under the influence as defined by W.S. 31-5-233(a)(v), whether the person was placed under arrest, or if a test was administered, whether the test results indicated that the person had an alcohol concentration of eight one-hundredths of one percent (0.08%) or more, and whether, except for the persons described in this act who are incapable of cooperating with the administration of the test, he had been given the advisements required by W.S. 31-6-102(a)(ii).

[¶18]   Ms. Romero does not take issue with the initial stages of her interaction with Officer Phillips.  Rather, Ms. Romero claims the encounter became unlawful when Officer Phillips required her to sit in the back of his locked patrol car, which she argues was an arrest without probable cause.  She asserts because of this unlawful arrest, the OAH should have suppressed evidence obtained after Ms. Romero entered the car, including her poor performance on the field sobriety tests and the results of her breath test, and vacated and rescinded WYDOT's proposed suspension of her driver's license.   Therefore, Ms. Romero's challenge is to the OAH's determination "the arresting officer lawfully contacted, investigated, and arrested" her under § 31-6-103(b).  As explained below, we do not agree Officer Phillips unlawfully arrested Ms. Romero when he placed her in the patrol car.  Instead, he conducted a proper investigative detention in accordance with constitutional protections.

[¶19] The United States Constitution and the Wyoming Constitution prohibit "unreasonable searches and seizures."  U.S. Const. amend. IV; Wyo. Const. art. 1, § 4. Under both constitutions, warrantless searches and seizures are per se unreasonable unless they are justified by probable cause or established exceptions. *Morris v. State,* 908 P.2d 931, 935 (Wyo. 1995).  One exception to the warrant requirement for seizing a person is the *Terry* doctrine, which permits "investigative detentions"—limited warrantless seizures/detentions of citizens for purposes of performing an investigation.  To justify an investigative detention, an officer must show "'specific and articulable facts and rational inferences which give rise to a[n] [objectively] reasonable suspicion that a person has committed or may be committing a crime[.]'" *Flood v. State,* 2007 WY 167, ¶ 14, 169 P.3d 538, 543-44 (Wyo. 2007) (quoting *Custer v. State,* 2006 WY 72, ¶ 13, 135 P.3d 620, 624 (Wyo. 2006), and citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968) (other citation omitted)).[1]  An arrest, on the other hand, requires probable cause that

---

[1] The case before us does not involve a "*Terry* stop," as the Romeros' vehicle was already disabled in the roadway when Officer Phillips arrived.  Nonetheless, the analysis under *Terry* generally applies if the consensual encounter during an initial accident response becomes a situation where a reasonable person would not feel free to decline an officer's assistance or otherwise terminate an encounter. *See, e.g., United States v. Angulo-Fernandez*, 53 F.3d 1177, 1179-80 (10th Cir. 1995); *Shaw v. State*, 2009 WY 18, ¶ 24, 201 P.3d 1108, 1113 (Wyo. 2009).

a person has committed a crime. *Id.* at ¶ 14, 169 P.3d at 544 (citing *Custer*, ¶ 13, 135 P.3d at 625) (other citation omitted).

[¶20]   Reasonable suspicion is simply "a particularized and objective basis" for suspecting a particular person of criminal activity. *Speten v. State,* 2008 WY 63, ¶ 4, 185 P.3d 25, 28 (Wyo. 2008) (citations omitted).   The totality of the circumstances, rather than isolated facts, are considered in determining whether an investigative detention is supported by reasonable suspicion. *See Guandong v. State*, 2022 WY 83, ¶ 21, 512 P.3d 648, 652 (Wyo. 2022).   When reviewing the totality of the circumstances, we consider common sense and ordinary human experience and defer to a law enforcement officer's ability to distinguish between innocent and suspicious actions. *Vogt v. State ex rel. Dep't of Transp.,* 2013 WY 123, ¶ 18, 310 P.3d 899, 906 (Wyo. 2013) (citations omitted).   A person's appearance, odor, behavior in answering questions, ability to retrieve information, and performance on field sobriety tests are all things that can factor into an officer's objective determination of signs of impairment. *See, e.g., Smith v. State ex rel. Wyo. Dep't of Transp.,* 11 P.3d 931, 937 (Wyo. 2000); *see also United States v. Arvizu,* 534 U.S. 266, 274-75, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).   Finally, in considering all the circumstances, the question is not whether there is a possible innocent explanation for each of the factors, but whether taken together they give rise to reasonable suspicion that criminal activity may be occurring. *See Garvin v. State*, 2007 WY 190, ¶ 16, 172 P.3d 725, 729-30 (Wyo. 2007).

[¶21]   "Because we are reviewing an administrative agency's rulings on a constitutional question, we apply the substantial evidence standard to the OAH's findings of fact."[2] *Batten,* ¶ 12, 170 P.3d at 1241 (citing *Bradshaw v. Wyo. Dep't of Transp. Drivers' License Div.,* 2006 WY 70, ¶ 11, 135 P.3d 612, 616 (Wyo. 2006)).   The OAH's ultimate conclusion that Ms. Romero was detained consistent with constitutional protections is reviewed *de novo*. *Moulton v. State*, 2006 WY 152, ¶ 13, 148 P.3d 38, 42 (Wyo. 2006) ("The question of whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed *de novo*.").

[¶22]   To determine the nature of Ms. Romero's detention when she was placed in Officer Phillips' patrol car, the encounter between Officer Phillips and Ms. Romero must be examined from the outset considering all the surrounding circumstances, including Mr. Romero's behavior. *See, e.g., Flood,* ¶ 18, 169 P.3d at 546-47 (considering the passenger's nervousness during a traffic stop as a factor in determining whether the totality of the circumstances justified the officer's detention of the driver).   The initial encounter with the Romeros began as a voluntary one when Officer Phillips observed their vehicle stuck in a

---

[2]   "Our application of the substantial evidence standard of review to the agency's factual findings distinguishes administrative cases from criminal cases where we review the district court's findings of fact regarding a claim of an illegal search or seizure under the clearly erroneous standard." *Batten,* ¶ 12 n. 3, 170 P.3d at 1241 n.3 (citing *Moulton v. State,* 2006 WY 152, ¶ 13, 148 P.3d 38, 42 (Wyo. 2006)).

snowbank and radioed for a "motorist assist" before he exited his patrol car.  The OAH found and concluded, based upon the totality of all facts and circumstances then known to him, Officer Phillips developed reasonable articulable suspicion sufficient to justify detaining Ms. Romero "for a DWUI investigation, including his placing [her] into his patrol vehicle and transporting [her] to the Carbon County Jail/sally port for the purpose of administering SFSTs[.]"  The record contains substantial evidence to support the OAH findings that Officer Phillips had reasonable articulable suspicion to detain Ms. Romero.

[¶23]  When Officer Phillips initially came upon the Romeros' stuck pickup, he heard a man yelling at a female and worried a domestic disturbance was occurring.  After exiting his patrol vehicle, Officer Phillips almost immediately encountered Ms. Romero and "smelled a very strong overwhelming odor of alcohol."  During subsequent discussions confirming Ms. Romero was the driver of the disabled truck, Officer Phillips noticed both Mr. and Ms. Romero showed signs of alcohol impairment in their speech.  Officer Phillips then separated Mr. and Ms. Romero, and asked Ms. Romero multiple times how much she had to drink.  By this point, and although it is not an issue on appeal, Officer Phillips' voluntary encounter with Ms. Romero had become an investigative detention based upon his reasonable suspicion she was driving while intoxicated.  *Flood,* ¶ 14, 169 P.3d at 543-44; *see, e.g., Shaw*, ¶ 24, 201 P.3d at 1113 (finding a consensual encounter after a trooper stopped to render aid to a driver stuck in snow became a traffic stop or investigative detention once the driver could not produce his driver's license); *Clay v. State*, 2016 WY 55, ¶¶ 21-22, 372 P.3d 195, 199 (Wyo. 2016) (finding reasonable suspicion the driver was intoxicated allowed an investigative detention to extend beyond the scope of the initial stop).  When Ms. Romero answered Officer Phillips' questions, she was unresponsive and evasive, with her last answers being, "just do the tests; it's fine," followed by, "we'll do all the tests; we'll figure it out."  Ms. Romero's responses justified extending the investigative detention both because they provided additional evidence supporting a suspicion she was intoxicated, and because she volunteered to do field sobriety tests.[3]  *Batten*, ¶ 11, 170 P.3d at 1241 (stating an officer may expand an investigative detention if the person consents to the expansion).

[¶24]  As Ms. Romero was talking with Officer Phillips, Mr. Romero approached, prompting Officer Phillips to walk him away from Ms. Romero and radio for help a second time.  When Officer Phillips tried to continue his investigation and Mr. Romero became agitated, Ms. Romero asked Mr. Romero to "settle," to which he replied, "No; I'm about to reach my limit."  This prompted immediate reactions from both Ms. Romero ("Be careful") and Officer Phillips ("What limit are you talking about?").  At this point, Officer Phillips began telling Ms. Romero to sit in the back of his patrol car due to his belief that Mr. Romero was about to become physically violent.  Although Ms. Romero initially refused to get in the car, Mr. Romero started to walk toward them, prompting Ms. Romero

---

[3] Ms. Romero states on appeal that she withdrew her consent to do field sobriety tests.  There is no evidence in the record to support this assertion, including the videotape of her encounter with Officer Phillips.

to state, "Babe, babe, stop, babe; alright, we'll just sit in the car." Once Ms. Romero got in the back of the car and Officer Phillips closed the door, Ms. Romero was locked inside. It is at this point that Ms. Romero alleges Officer Phillips' conduct amounted to a de facto and unlawful arrest.

[¶25] While the OAH did not address this contention directly, its conclusion that Officer Phillips had sufficient reasonable suspicion to detain Ms. Romero in his patrol car as part of an investigation indicates it did not consider Ms. Romero under arrest at that time. Under the circumstances of this case, we agree that placing Ms. Romero in the back of the car did not transform Officer Phillips' investigative detention into a de facto arrest.

[¶26] "If a police-citizen encounter exceeds the limits of a *Terry* [investigative] stop, the detention becomes an arrest that must be supported by probable cause." *United States v. Neff*, 300 F.3d 1217, 1221 (10th Cir. 2002) (citing *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993)). For example, "'[t]he use of firearms, handcuffs, and other forceful techniques' generally exceed the scope of an investigative detention and enter the realm of an arrest." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (quoting *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994)). Such forceful techniques could, under certain circumstances, include locking an individual in the back of a patrol car. *See, e.g., Cortez*, 478 F.3d at 1116 (ruling seizing, handcuffing, *Mirandizing*, and placing an individual in the back of a locked patrol car was a custodial arrest). However, the use of forceful or intrusive techniques during an investigation is not always tantamount to an arrest. In some instances "[d]uring an investigative stop, 'officers may take steps reasonably necessary to protect their personal safety.'" *Fender v. State,* 2003 WY 96, ¶ 17, 74 P.3d 1220, 1227 (Wyo. 2003) (explaining the use of handcuffs during an investigative stop may be appropriate to protect an officer and others from possible danger); *see, e.g*., *Brown v. State*, 944 P.2d 1168, 1171-74 (Wyo. 1997) (holding a potential threat to officer safety justified officers drawing their weapons and ordering the driver and passenger to exit a vehicle and drop to their knees, which did not rise to the level of an arrest); *see also Cortez*, 478 F.3d at 1123 (reasoning that placing an individual in the back of a locked patrol car without handcuffing or *Mirandizing* her, and allowing her to use a cell phone, was part of an investigatory detention, not an arrest). As a result, there is no "bright line" rule or "litmus test" regarding whether or when an investigative detention becomes a de facto arrest. *United States v. White*, 584 F.3d 935, 952 (10th Cir. 2009) (citing *Florida v. Royer*, 460 U.S. 491, 506, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Neff*, 300 F.3d at 1220). Rather, "'common sense and ordinary human experience must govern over rigid criteria.'" *Neff*, 300 F.3d at 1220 (quoting *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d. 605 (1985)).

[¶27] In this case, while it was intrusive to place Ms. Romero in the back of a locked patrol car, it was objectively reasonable under the totality of the circumstances. Specifically, it was reasonable for Officer Phillips to be concerned about his and Ms. Romero's safety considering Mr. Romero's conduct and statements. It was also reasonable for him to

9

conclude Mr. Romero was about to become physically violent, a concern that played out a short time later. *See, e.g., Flood*, ¶ 18, 169 P.3d at 544 (holding a trooper was justified, "for the sake of safety, in asking [the driver and the passenger] to step back to his car while he wrote their tickets"); *Fender*, ¶ 17, 74 P.3d at 1227; *Brown*, 944 P.2d at 1171-74. Mr. Romero repeatedly ignored Officer Phillips' instructions to keep a safe distance. Mr. Romero also rebuked Ms. Romero's attempt to calm him down, responding, "No; I'm about to reach my limit." Shortly after Officer Phillips asked him, "What limit are you talking about?" Mr. Romero approached the patrol car, prompting Ms. Romero to again try to calm him down and then abruptly get in the patrol car. In addition, Officer Phillips' placement of Ms. Romero in the back of his patrol car was no more intrusive than necessary under the circumstances. Officer Phillips did not handcuff Ms. Romero, *Mirandize* her, or even physically place her in the patrol car—she got into the car after Officer Phillips' repeated instructions once Mr. Romero started to approach. *Cortez*, 478 F.3d at 1123. Although she was in the back of the patrol car—which was justified for her safety and that of Officer Phillips—a reasonable person in Ms. Romero's circumstances would have understood she was not under arrest. *See United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993) (relevant inquiry to determining whether a person is under arrest is "how a reasonable person in the suspect's position would have understood [her] situation") (citing *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151, 82 L. Ed. 2d 317 (1984)).

[¶28] Finally, Ms. Romero asserts the record does not support a conclusion that Officer Phillips had a sufficient basis to detain her in the back of the patrol car while he managed Mr. Romero.[4] "An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." *Batten,* ¶ 11, 170 P.3d at 1241 (citing *O'Boyle v. State,* 2005 WY 83, ¶ 47, 117 P.3d 401, 414 (Wyo. 2005)). The OAH concluded Officer Phillips had a "reasonable[] articulable suspicion to justify . . . detaining [Ms. Romero] for a DWUI investigation" by placing her in the back of his patrol car and taking her to the sally port for testing. To reach that conclusion, the OAH necessarily found Ms. Romero's detention in the patrol car was no longer than necessary to effectuate the purpose of the encounter considering the circumstances that transpired immediately after she was placed in the car (the physical altercation with and arrest of Mr. Romero). There is substantial evidence in the record to support the OAH's findings and conclusions that Officer Phillips properly detained Ms. Romero in the patrol car. She waited in the patrol car for less than nine minutes before Officer Phillips returned to the car and started to drive her to the sally port for the field sobriety testing she volunteered to complete. During that time, Officer Phillips was involved in a physical altercation with Mr. Romero, who Officer Phillips feared wanted to hurt him, Ms. Romero, or both. The altercation began when Mr. Romero confirmed that fear by exclaiming, "I will wreck you." Thereafter, Officer Phillips spent a few minutes assisting in the arrest of Mr. Romero, recovering from the altercation,

---

[4] Ms. Romero does not assert that it was improper to extend the detention by transporting her to the sally port to conduct field sobriety tests there.

and briefing other officers on what happened before returning to his patrol car and Ms. Romero. Considering Mr. Romero's conduct and Officer Phillips' concerns for his own and Ms. Romero's safety, the detention in the patrol car was no longer than necessary and justified under the circumstances.

[¶29] Ms. Romero's placement in the back of Officer Phillips' patrol car did not transform his investigative detention of her into a de facto arrest. Our finding that Ms. Romero's detention did not rise to the level of an arrest obviates the need to examine whether Officer Phillips had probable cause to arrest her at the point in time when she entered the patrol car.

## CONCLUSION

[¶30] We conclude the OAH's factual findings that Officer Phillips had reasonable suspicion Ms. Romero was driving while intoxicated are supported by substantial evidence and its ultimate legal conclusion that she was lawfully detained in the back of his patrol car is in accordance with the law.

[¶31] Affirmed.